UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALANE ZELLARS | : | |
| 682 Heller Ave. | : | CIVIL ACTION |
| Williamsport, PA 17701 | : | |
| | : | CASE NO.: |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| GENESIS HOUSE, INC. D/B/A GENESIS | : | |
| 800 W. 4th Street, Suite G-01 | : | |
| Williamsport, PA 17701 | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, Alane Zellars ("Plaintiff"), hereby complains as follows against Genesis House,

Inc. d/b/a Genesis ("Defendant") and avers as follows:

**INTRODUCTION**

1.      Plaintiff initiates the instant action to redress violations by Defendant of the

Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, et seq.), the Family

and Medical Leave Act ("FMLA" - 29 U.S.C. §2601 et seq.), and the Pennsylvania Human

Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff

seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's

claims, because this civil action arises under a law of the United States.

_____

[1] Plaintiff's claims under the PHRA are referenced for notice purposes. She is required to wait one (1) full year before initiating a lawsuit pursuant to the PHRA from the date of dual-filing with the EEOC. Plaintiff will move to amend her instant lawsuit to include mirroring claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's future state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a citizen of the Middle District of Pennsylvania.

5.      Plaintiff is in part proceeding herein under the ADA and for such claim has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## **PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant is a private company that offers outpatient treatment and therapy to individuals seeking help for substance use disorders, and is located at the above-captioned address.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.      Plaintiff was hired by Defendant on or about February 17, 2025 as an Assistant Drug & Alcohol Counselor.

12.      In this role, Plaintiff was directly supervised by Amy Fleming ("Fleming") – Lead Counselor, and indirectly supervised by Shakeena Lee ("Lee") – Administrator, and Richard Lloyd ("Lloyd") – Clinical Director.

13.      At all times during her employment with Defendant, Plaintiff performed her job in a dutiful and competent manner, as evidenced by her dedication to the clients she serviced as well as her lack of disciplinary history.

14.      Plaintiff suffers from several ADA-qualifying disabilities including acute lumbar disc herniations with associated neurological deficits and intractable neuropathic pains, which at times can cause her partial body paralysis.

15.      As a result of Plaintiff's disabilities, several of her major life activities are affected, including but not limited to walking, lifting, bending, twisting, normal spinal nerve function, and normal muscle strength.

16.      Despite Plaintiff's disabilities, she was able to successfully perform her role with Defendant, but at times needed accommodations (discussed further *infra*).

17.    Unfortunately, on or about June 27, 2025, Plaintiff suffered a severe flare-up of her disabilities wherein her body was partially paralyzed, and was rushed to the hospital.

18.    As a result of the hospitalization, on or about June 27, 2025, Plaintiff contacted Fleming, informed her of her disabilities, and requested the accommodation of a brief medical leave of absence to recover from the severe flare-up of her disabilities.

19.    Due to Plaintiff's flare-up, she was hospitalized from on or about June 27, 2025 to July 1, 2025.

20.    Throughout this initial hospitalization (discussed further *infra*), Defendant did not contact Plaintiff in support of her accommodation request; instead, Fleming dismissed Plaintiff and told her she could not discuss Plaintiff's accommodation requests or disabilities as she was on vacation.

21.    On the day of her discharge from the hospital, Plaintiff again contacted Fleming and informed her of her discharge status, disability specifics, and her ability to actively return to work.

22.    Unfortunately, before Plaintiff had the opportunity to return to work, she was again rushed to the hospital due to a flare-up wherein she again suffered paralysis symptoms, and was advised that due to the severity of new paralysis she was suffering, she would be required to attend inpatient physical therapy.

23.    As a result, on or about July 2, 2025, Plaintiff informed Fleming that she was again hospitalized and required the continued accommodation of continued time off of work while she recovered.

24.    Following Plaintiff's initial conversation with Fleming on June 27, 2025, Plaintiff kept in *constant contact* with Fleming, including providing her with updates regarding her

medical status, her need for the continued accommodation of time off of work, her return to work status, and doctor's notes evidencing the same.

25.     On or about July 23, 2025, while still out on leave, and at the advice of her doctor, Plaintiff informed Fleming that although she was able to return to work soon, she needed the accommodation of temporarily working from home and for occasional breaks when working, as Plaintiff believed this would speed up her ability to begin working for Defendant.

26.     It was not an undue burden for Plaintiff to work from home, as most of Plaintiff's work was actually ***already performed virtually*** before her medical leave, and the remaining non-virtual duties could have *easily* been rescheduled to be handled in person upon Plaintiff's return to working in the office.

27.     Instead of engaging in the interactive process, Fleming immediately dismissed Plaintiff's work from home accommodation request, and made an excuse that Defendant does not offer work from home accommodations.

28.     Despite Fleming's false assertion, upon information and belief, Defendant has offered work from home accommodations in the past to other similarly situated, non-disabled employees without hesitation.

29.     Following Defendant's flat-out denial of Plaintiff's temporary work from home accommodation, Plaintiff had no other alternative than to continue to stay out on medical leave while she recovered and attended inpatient therapy.

30.     While Plaintiff continued to be out on ADA-qualifying leave, on or about August 5, 2025, ***Defendant, at their own discretion, told Plaintiff that she should apply for "FMLA leave"*** and provided her with the U.S. Department of Labor Wage and Hour Division FMLA certification paperwork.

31.     Upon receipt of Defendant's FMLA paperwork, Plaintiff believed she was qualified for job-protected leave (as also further stated on the U.S. Department of Labor Wage and Hour Division FMLA certification paperwork she was provided), and therefore, submitted the information to her doctor to fill out.

32.     Upon information and belief, despite Plaintiff's doctor's frequent calls and follow-ups to Defendant on what specific information Defendant needed in order to approve Plaintiff for FMLA leave, Defendant ignored Plaintiff's doctor, and made her jump through proverbial hoops in order to fill out Plaintiff's leave paperwork.

33.     Nonetheless, on or about August 19, 2025, Plaintiff's doctor filled out and submitted Plaintiff's FMLA certification paperwork to Defendant. **Plaintiff was under the impression she was on FMLA job-protected leave following Defendant's receipt, as Defendant never questioned her FMLA submission after August 19, 2025**.

34.     It was clear, however, that Defendant was never intent on approving Plaintiff for leave, and was instead determined to terminate her due to her disabilities and need for accommodations.

35.     As evidence of discriminatory intent, on or about August 13, 2025, only eight (8) days after Plaintiff's receipt of FMLA paperwork, and while in Defendant's office to give paperwork to Defendant in support of her FMLA request, Lloyd ran into Plaintiff and asked her if she had applied for "unemployment benefits."

36.     When Plaintiff questioned why she would need unemployment benefits as she was still a current employee with Defendant and was simply out on a brief medical leave, Lloyd responded to Plaintiff that she should open a claim (evidencing that Plaintiff would soon be terminated and be in need of such benefits).

37.     *The next day*, on or about August 14, 2025, as Defendant again had issues with the paperwork for Plaintiff's FMLA claim, Plaintiff again returned to Defendant's office briefly. While in the office, Plaintiff oversaw a discriminatory and retaliatory email from Lloyd that stated:

"**Alane is fired regardless if she comes back not even for fee for services I am so mad.**"

38.     Lloyd's email was *unequivocal, direct proof* that Defendant 1) was aware of Plaintiff's FMLA request, 2) was aware of Plaintiff's disability, 3) was aware of Plaintiff's accommodation requests, 4) was never intent on providing any accommodations or engaging in any interactive process with Plaintiff, and 5) was intent on terminating Plaintiff upon notice of her disabilities and need for accommodations/FMLA leave.

39.     For the next approximate month, Plaintiff continued to be out on what she believed was approved ADA/FMLA qualifying leave.

40.     In or about the beginning of October 2025, as Plaintiff was soon able to fully return to work, Plaintiff's doctor faxed a note to Defendant indicating that Plaintiff was intent to return to work with Defendant on October 22, 2025.

41.     However, on or about October 17, 2025, shortly before Plaintiff was able to return to work, and in short temporal proximity to Plaintiff's last accommodation requests and while still out on FMLA leave, Defendant retaliatorily and discriminatorily terminated Plaintiff for false and pretextual reasons including that Plaintiff did not have a "definitive" return to work date.

42.     Defendant's reason for termination is completely pretextual as: 1) Defendant had definitive proof from <u>Plaintiff and Plaintiff's doctor</u> that she was able and cleared to return to work as of October 22, 2025, 2) Plaintiff was terminated in short temporal proximity to her final

7

accommodation requests, 3) Plaintiff was terminated while out on FMLA job-protected leave, and 4) Defendant had unequivocally already made up their mind to terminate Plaintiff in August 2025.

43.    Based on the foregoing, Plaintiff believes and therefore avers that she was terminated from her employment with Defendant in violation of the ADA and the FMLA.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADAAA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

44.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45.    Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities (set forth *supra*).

46.    Despite Plaintiff's aforementioned health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

47.    Plaintiff requested several reasonable accommodations from Defendant (set forth *supra*).

48.    Plaintiff was terminated on or about October 17, 2025, while out on medical leave, and in short temporal proximity to her final accommodations requests.

49.    Plaintiff believes and therefore avers that she was subjected to discrimination and retaliation because of (1) her known and/or perceived health problems; (2) her record of impairment; (3) her requested accommodations; (4) her utilization of FMLA qualifying leave; and (5) Defendant's failure to properly accommodate her (set forth *supra*).

8

50.     Plaintiff further believes and therefore avers that her disabilities were a motivating/determinative factor in the termination of her employment with Defendant.

51.     Defendant's actions as aforesaid constitute violations of the ADA.

### COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation)

52.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.     Plaintiff requested and utilized leave to care for her disabilities.

54.     Plaintiff was explicitly told by Defendant to apply for "FMLA leave" utilizing the U.S. Department of Labor Wage and Hour Division "Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act."

55.     As a result of Defendant's contention, Plaintiff applied for FMLA leave and submitted a completed FMLA certification with supporting information from her doctor to Defendant.

56.     Plaintiff relied upon assurances by Defendant that she was on "FMLA leave" (which she understood to be federal job protection) and then suffered a detriment by being terminated while out on leave as a result of such reliance.

57.     Defendant is therefore estopped from denying FMLA protections (including as to retaliation) or arguing non-coverage as a defense to FMLA retaliation[2].

---

[2] Courts have held employers are estopped from arguing non-coverage in such circumstances. *See Medley v. Cty. of Montgomery*, No. 12-1995, 2012 U.S. Dist. LEXIS 99006, at *6-8 (E.D. Pa. July 16, 2012)("In the context of the FMLA, "equitable estoppel may, in an appropriate factual scenario, provide a means of redress for employees who detrimentally rely on their employers' misrepresentations about FMLA eligibility." Wilson, 2011 U.S. Dist. LEXIS 127048, 2011 WL 5237345, at *5. "An employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under the FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage" if the employee reasonably relied on the misrepresentation to her detriment. *Minard v. ITC Deltacom Commc'ns, Inc.,* 447 F.3d 352, 358 (5th Cir. 2006); *see also Dombrowski v. Jay Dee Contractors, Inc.,* 571 F.3d 551, 554 (6th Cir. 2009)

58.    Plaintiff was terminated while out on FMLA-qualifying leave, and in close temporal proximity to her request for FMLA-qualifying leave.

59.    Defendant committed retaliation in violation of the FMLA by: 1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; 2) considering Plaintiff's FMLA leave needs in making the decision to terminate her.

60.    These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.    Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.    Plaintiff is to be awarded liquidated and punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

---

("In certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the employer from raising non-eligibility as a defense.").

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P) / 215-639-4970 (F)
akarpf@karpf-law.com

Dated: July 31, 2026

11

## VERIFICATION

The undersigned states that the facts in the foregoing Complaint and Jury Demand are true and correct to the best of her knowledge, information and belief. The undersigned understands that any intentionally false statements herein are subject to criminal penalties relating to sworn and unsworn statements.


Dated:  7/31/2026

_____

_____

Alane Zellars